## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**GARTH ALAN FINLEY,**
**GARY L. FINLEY, Ex Rel.,**
**His Deceased Son,**

      **Plaintiff,**

      **vs.**                                               **Civ. No. 17-698 SCY**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO REMAND[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 12) filed October 27, 2017, in support of Plaintiff Garth Alan Finley's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and Title XVI supplemental security income benefits. On January 31, 2018, Plaintiff filed his Motion to Remand or Reverse ("Motion"). Doc. 18. The Commissioner filed a Response in opposition on May 2, 2018 (Doc. 22), and Plaintiff filed a Reply on May 16, 2018 (Doc. 24). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. Docs. 5, 8, 9.

# I. <u>Background and Procedural Record</u>

Claimant Garth Alan Finley ("Mr. Finley") alleged that he became disabled on July 31, 2008, at the age of thirty-eight because of Crohn's disease, irritable bowel syndrome, stomach ulcers, intestinal polyps, high blood pressure, elevated cholesterol, fainting and seizures, chronic depression and anxiety, and random periods of drinking alcohol. Tr. 219, 227.[2] Mr. Finley completed four of more years of college in 1995, and worked as an engineering consultant for NASCAR. Tr. 228-30, 236, 239-54.

On February 23, 2009, Mr. Finley protectively filed his first application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. (Tr. 115, 187-93.) Mr. Finley concurrently filed for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 116.) Mr. Finley's applications were initially denied on August 18, 2009, and November 23, 2009. (Tr. 115-118, 123-27.) They were denied again at reconsideration on September 20, 2010, and March 21, 2011. (Tr. 119-22 130-33, 134-37.) On May 20, 2011, Mr. Finley requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 140-41.) ALJ Ben Willner conducted a hearing on July 12, 2012. (Tr. 33-80.) Mr. Finley appeared in person at the hearing with attorney representative Michael F. Becker. (*Id*.) On December 12, 2012, ALJ Willner issued an unfavorable decision. (Tr. 7-25.) On June 24, 2014, the Appeals Council issued its decision denying Mr. Finley's request for review and upholding the ALJ's final decision. (Tr. 1-5.) On August 18, 2014, Mr. Finley timely filed a Complaint seeking judicial review of the Commissioner's final decision. (*See* USDC NM Civ. No. 14-736 SCY (Doc. 1).)

---

[2] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 12) that was lodged with the Court on October 27, 2017.

Upon judicial review, the Court reversed the Commissioner's decision and remanded Mr. Finley's claim to the Commissioner to conduct further proceedings. Tr. 1045-58. The Court instructed the Commissioner that on remand, "the ALJ shall ensure that all medical evidence in the record is considered at Step Four, Phases One and Two of the sequential analysis." Tr. 1058.

Before the ALJ rendered a new decision on remand, Mr. Finley filed second applications for DIB and SSI. Tr. 1257-58, 1263-68. Mr. Finley's second applications were initially denied on February 26, 2015. Tr. 1005, 1006, 1007-14, 1015-22, 1135. They were denied again at reconsideration on December 3, 2015. Tr. 990-1004, 1023, 1024, 1025-39, 1136-39, 1140-43. On January 27, 2016, Mr. Finley requested a hearing from an ALJ. Tr. 1144-45. On March 21, 2016, the Appeals Council entered an Order vacating the ALJ Willner's decision, and explained that

> [t]he claimant filed subsequent claims for Title II and Title XVI benefits on December 9, 2014. The Appeals Council's action with respect to the current claim renders the subsequent claim duplicate. Therefore, the Administrative Law Judge will consolidate the claim files, create a single electronic record and issue a new decision on the consolidated claims (20 CFR 404.952 and 416.1452, HALLEX I-1-10-10). In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, will associate the claim files and issue a new decision on the associated claims.

Tr. 1042. ALJ Lillian Richter conducted a hearing on February 2, 2017.[3] Tr. 911. Because Mr. Finley passed away prior to the hearing, Nancy Finley, Mr. Finley's mother, appeared on his behalf. *Id.* Mr. Finley was represented by Attorney Michael Armstrong. *Id.* On March 14, 2017, ALJ Richter issued an unfavorable decision. Tr. 908-26. Because this case had already been remanded following judicial review, Mr. Finley timely filed the instant action, rather than requesting review by the Appeals Council, as permitted by 20 C.F.R. § 416.1484(d). Doc. 1.

---

[3] The transcript of these proceedings is not in the Administrative Record.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

When, as here, there is medical evidence of drug addiction and alcoholism (DAA) in the record, the ALJ must add a sixth step to the evaluation. That step requires the ALJ to determine whether DAA is a "material contributing factor" to the claimant's disability. 20 C.F.R. §§ 404.1535(a) and 416.935(a). In making this determination, the "ay factor . . . is whether [the ALJ] would still find [claimant] disabled if [claimant] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1) and 416.935(b)(1); *see also* SSR 13-02p, 2013 WL 621536. The ALJ must identify which of the claimant's physical and/or mental limitations, upon which the

threshold disability determination was based, would remain if the clamant stopped using drugs or alcohol. Then the ALJ must determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ finds that a claimant's remaining limitations would not be disabling, then DAA is a "material contributing factor" to the claimant's disability, and the ALJ must find the claimant is not disabled. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); *see also* SSR 13.02p. If the ALJ finds the remaining limitations would in and of themselves be disabling, then the ALJ must find that the claimant is disabled. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

### B. Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the

ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. <u>Analysis</u>

The ALJ followed the proper sequential evaluation process by including alternative findings at step three, four and five of the sequential evaluation to account for Mr. Finley's limitations with and without DAA. The ALJ also made the sixth step finding required in such cases by determining whether Mr. Finley would still be disabled if he stopped using alcohol. At step one, the ALJ found that Mr. Finley met the insured status requirements through December 31, 2013, and had not engaged in substantial gainful activity since his alleged onset date of July 31, 2008. Tr. 914. At step two, the ALJ determined that Mr. Finley had severe impairments of right ankle and foot stress fracture and tendinopathy, ethanol dependence, anxiety, thumb tendonitis, chronic mild depression, chronic back pain with thoracic scoliosis, benzodiazepine dependence, bipolar disorder, and bilateral foot edema with right ankle pain. *Id.* The ALJ also found Mr. Finley had nonsevere impairments of hypercholesterolemia, hypercalcemia, benzodiazepine dependence [sic], and irritable bowel syndrome. *Id.* At step three, the ALJ determined that with or without considering DAA, Mr. Finley did not have an impairment or combination of impairments that meets or equals the severity of one of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 914-16, 918. At step four, the ALJ determined Mr. Finley's residual functional capacity including DAA as follows:

> [a]fter careful consideration of the entire record, I find that, based on all of the impairments, including the substance use disorders, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he could lift, carry, push and pull 20 pounds

occasionally and 10 pounds frequently, stand/walk for 6 hours and sit for 6 hours in an 8-hour day. Additionally, the claimant was limited to simple routine work, occasional interaction with supervisors and coworkers, and incidental interaction with members of the public. The claimant was limited to making simple work related decisions in a workplace with few changes in the routine work setting. The claimant could not perform work in tandem with other employees, and could not perform assembly line type work. The claimant might have missed work one time per week, might have been unable to remain on task, and would have been unable to deal with any change in the routine work setting.

Tr. 916. The ALJ's alternative RFC did not include the effects of DAA as follows:

[i]f the claimant stopped the substance abuse, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand/walk for 6 hours and sit for 6 hours in an 8-hour day. Additionally, the claimant was limited to simple routine work, occasional interaction with supervisors and coworkers, and incidental interaction with members of the public. The claimant was limited to making simple work related decisions in a workplace with few changes in the routine work setting. The claimant could not perform work in tandem with other employees, and could not perform assembly line type work.

Tr. 919. At the second phase of step four, the ALJ determined that with or without considering the effects of DAA, Mr. Finley could not perform the exertional demands of his past relevant work. Tr. 917, 924. At the fifth step of the sequential evaluation, the ALJ found there were no jobs existing in significant numbers that Mr. Finley could perform when the effects of DAA were considered. Tr. 917-18. Because the ALJ found Mr. Finley's DAA material to his disability, however, the ALJ was required to formulate a second RFC without considering the effects of DAA. Based on the second RFC and the testimony of the VE, the ALJ concluded that if Mr. Finley stopped using alcohol, there were jobs that existed in significant numbers in the national economy that he could perform. Tr. 924-25. The ALJ, therefore, determined that Mr. Finley was not disabled. Tr. 925.

In his Motion, Mr. Finley argues that the ALJ (1) failed to properly account for the opinions of his treating psychiatrists;[5] (2) failed to properly account for certain opinions of the State agency examining and nonexamining psychological consultants; and (3) failed to conduct a proper DAA evaluation in accordance with SSR 13-2p. Doc. 18 at 14-16. For the reasons discussed below, the Court finds the ALJ did not apply the correct legal standard in weighing the treating physician opinion evidence related to Mr. Finley's mental impairments and that this case, therefore, requires remand.

## A.    Relevant Medical Source Opinion Evidence

### 1.    Cathy Simutis, Ph.D.

On February 18, 2011, State agency examining psychological consultant Cathy Simutis, Ph.D., evaluated Mr. Finley. Tr. 801-03. Mr. Finley reported that he was not able to work because of his anxiety and depression, and because his "ability to get along with people [was] questionable." Tr. 801. Dr. Simutis took Mr. Finley's family, training, work, and medical histories, and noted his reported activities of daily living. Tr. 801-02. When asked if he was currently using alcohol, Mr. Finley responded, "I try not to," and explained that he drinks to calm himself down. Tr. 802. On mental status exam, Dr. Simutis observed that Mr. Finley was alert and oriented times three, maintained good eye contact, was cooperative, and had slow speech at a

---

[5] Mr. Finley raises arguments related to two treating psychiatrists – Dr. Steven Jenkusky and Dr. Anthony Umpierre. With respect to Dr. Umpierre, Mr. Finley argues that the ALJ failed to properly evaluate his medical source statement related to Mr. Finley's ability to do work-related mental activities, attached as Exhibit A to his Motion. Docs. 18 at 19 and 18-1. Mr. Finley explained in his Motion that "[f]or some reason, neither Dr. Umpierre's medical source state[ment] nor his treatment notes as a treating psychiatrist from Presbyterian (Exhibit B) were included in the ERE exhibit record. ALJ Richter, therefore, did not weigh or account for this opinion but rather accounted only for Dr. Umpierre's DAA statement (AR 1665)." *Id.* Although Dr. Umpierre's treatment notes are a part of the Administrative Record, Tr. 1609-29, Dr. Umpierre's medical source statement (Exhibit A) is not. Because the Court finds grounds for remand related to the ALJ's treatment of Dr. Jenkusky's opinion, the Court does not address Dr. Umpierre's medical source statement or whether there was good cause for failing to incorporate the evidence in the earlier proceedings.

tone within normal limits.  Tr. 803.  She also observed that Mr. Finley had visible tremors, and

appeared agitated, anxious and depressed.  *Id.*  Dr. Simutis noted that Mr. Finley reported visual

and auditory hallucinations, some suicidal and homicidal ideation without having a plan or

intent, and feeling down, hopeless and more forgetful.  *Id.*  Dr. Simutis diagnosed generalized

anxiety disorder; bipolar disorder, depressed; and alcohol abuse, early partial remission.  *Id.*  She

assessed a GAF score of 35.[6]  Tr. 802.  Dr. Simutis assessed that

> [Mr. Finley's] prognosis is guarded.  His ability to understand and remember
> instructions appears to be moderately limited.  His ability to concentrate and
> persist in a task appeared to be markedly limited.  His ability to interact with
> coworkers and the public appears to be markedly limited.  His ability to adapt to
> change appears to be mildly limited.

Tr. 803.

### 2.  Alvin Smith, Ph.D.

On March 19, 2011, State agency nonexamining psychological consultant Alvin Smith,

Ph.D., reviewed the medical record evidence[7] and prepared a Mental Residual Functional

Capacity Assessment ("MRFCA").  Tr. 806-07.  In Section I of the MRFCA, Dr. Smith

concluded that Mr. Finley had mostly *slight* limitations in each of the four broad categories,[8]

with the exception of *moderate* limitations in his ability to (1) maintain attention and

concentration for extended periods; (2) work in coordination with or proximity to others without

---

[6] The GAF is a subjective determination based on a scale of 100 to 1 of "clinician's judgment of the individual's overall level of functioning."  *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 32.  A GAF score of 30-39 indicates some impairment in reality testing or communication (*e.g.,* speech is at times illogical, obscure or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.,* depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).  *Id.* at 34.

[7] Dr. Smith discussed Dr. Simutis' report and cited Mr. Finley's education and current enrollment in school for web design.  Tr. 808.

[8] The MRFCA addresses twenty specific mental functions in four broad categories relevant to the vocational determinations required at steps four and five of the sequential evaluation.  The categories are understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  *See* Form SSA-4734-F4-SUP.

being distracted by them; (3) interact appropriately with the general public; (4) accept instructions and respond appropriately to criticism from supervisors; and (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  *Id.*  Based on his Section I conclusions, Dr. Smith assessed in Section III of the MRFCA that Mr. Finley

> retain[ed] the capacity to understand, remember, and carry out multi-level instructions; attend/concentrate for extended periods without a need for unscheduled breaks; apply reasonable judgment in worklike settings; and interact appropriately with co-workers, supervisors, and the general public on an incidental basis.

Tr. 808.

### 3. **Steven Jenkusky, M.D.**

#### a. **July 6, 2012**

On. July 6, 2012, Mr. Finley's treating psychiatrist Steven C. Jenkusky, M.D., completed a 12.04 Depression Listings Questionnaire Affective Disorders and 12.06 Anxiety Listings Questionnaire and indicated that Mr. Finley met the Part A, B and C criteria of those listings. Tr. 896-99, 900-02.  Dr. Jenkusky had been treating Mr. Finley since October 5, 2011, and had seen him four times when he completed the listings forms.[9]  Tr. 825-34.  Dr. Jenkusky explained that "[d]ue to the persistent nature of illness which to this point has not been successfully treated[, Mr. Finley] has not been able to maintain employment."  Tr. 899, 902.

---

[9] Mr. Finley applied to obtain substance abuse treatment through Presbyterian Behavioral Medicine's intensive outpatient program.  Tr. 832.  The intensive outpatient staff referred Mr. Finley to Dr. Jenkusky for assessment.  *Id.* On October 5, 2011, Dr. Jenkusky assessed that Mr. Finley clearly showed alcohol dependence, but also "somewhat unusual mood swings that do not quite seem to meet the criteria for bipolar disorder from my history.  Nonetheless, he does have rapid mood shifts from depression to being 'hyperfunctioning' as well as concurrent anxiety.  He appears to be motivated for substance abuse treatment."  Tr. 834.  Dr. Jenkusky made Axis I diagnoses of mood disorder, nos; anxiety disorder, nos; r/o PTSD; and alcohol dependence, which is now in remission.  *Id.*  He assessed a GAF score of 60.  *Id.*  From October 5, 2011, until June 14, 2012, Dr. Jenkusky's diagnoses and GAF assessment remained consistent.  Tr. 825-26, 827-29, 830-31.

### b.    May 28, 2015

On May 28, 2015, Dr. Jenkusky completed a Medical Assessment of Ability To Do Work-Related Activities (Mental) on Mr. Finley's behalf.  Tr. 1446-47.  Dr. Jenkusky had been treating Mr. Finley for approximately four years and had seen him eighteen times when he completed this assessment.[10]  Tr. 825-34, 1387-95, 1400-04, 1464-66.  Dr. Jenkusky assessed that Mr. Finley had *moderate* limitation in his ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) work in coordination with/or proximity to others without being distracted by them; (4) interact appropriately with the general public; (5) accept instructions and respond appropriately to criticism from supervisors; and (6) set realistic goals or make plans independently of others.  Tr. 1446-47.  He assessed that Mr. Finely had *marked* limitations in his ability to (1) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; (2) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; and (3) respond appropriately to changes in the work place.  *Id.*  Dr. Jenkusky assessed that Mr. Finley vacillated from *slight to marked* limitations in his ability to maintain attention and concentration for extended periods of time (*i.e.,* 2-hour segments).  Tr. 1446.  Dr. Jenkusky explained that Mr. Finley "alternate[d] between periods of intense focus (but isolated from others) to periods of extreme lethargy, no motivation and impaired functioning."  Tr. 1447.

---

[10] On March 13, 2013, Dr. Jenkusky made Axis I diagnoses of mood disorder, nos; r/o bipolar disorder; and alcohol dependence in early full remission.  Tr. 1404.  Dr. Jenkusky assessed a GAF score of 65.  *Id.*  Dr. Jenkusky's diagnoses and GAF assessment remained consistent from March 13, 2013, until the time of the May 28, 2015, functional assessment.  Tr. 1387, 1388, 1389-90, 1390-91, 1391-92, 1392-93, 1393-94, 1394, 1400-01, 1402-03, 1464, 65, 1465-66, 1466.

### c.     <u>February 18, 2016</u>

On February 18, 2016, Dr. Jenkusky completed a second Medical Assessment of Ability To Do Work-Related Activities (Mental) on Mr. Finley's behalf. Tr. 1381-82. Dr. Jenkusky had been treating Mr. Finley for approximately four years and a half years and had seen him twenty-four times when he completed this assessment. Tr. 825-34, 1387-95, 1400-04, 1464-66, 1599-1608. Dr. Jenkusky's assessment was consistent with his May 28, 2015, assessment. *Compare* Tr. 1381-82, *and* 1446-47. Dr. Jenkusky explained that Mr. Finley "alternate[d] between periods of intense focus, but only if isolated from others, to periods of extreme lethargy, depression, no motivation, poor concentration and impaired functioning." Tr. 1382.

On. February 18, 2016, Dr. Jenkusky also completed 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders listing forms, and indicated that Mr. Finley met the Part A and B criteria of those listings. Tr. 1383-84.

### 4.     <u>Scott Walker, M.D.</u>

On December 2, 2015, nonexamining State agency medical consultant Scott Walker, M.D., reviewed the medical record evidence[11] and prepared an MRFCA. Tr. 1000-01. In Section I of the MRFCA, Dr. Walker concluded that Mr. Finley had *moderate* limitations in his ability to (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) work in coordination with or in proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

---

[11] Elsewhere Dr Walker discussed certain of Dr. Jenkusky's treatment notes and Mr. Finley's reported functioning. Tr. 997-98. Dr. Walker indicated he considered DAA in his evaluation, and concluded that "DAA as not an issue." Tr. 998.

periods; (5) interact appropriately with the general public; (6) accept instructions and respond

appropriately to criticism from supervisors; (7) get along with coworkers or peers without

distracting them or exhibiting behavioral extremes; (8) maintain socially appropriate behavior

and to adhere to basic standards of neatness and cleanliness; (9) respond appropriately to changes

in the work setting; (10) travel in unfamiliar places or use public transportation; and (11) set

realistic goals or make plans independently of others. *Id.* Based on his Section I conclusions,

Dr. Walker assessed in Section III of the MRFCA that Mr. Finley

> can understand, remember, and carry out detailed but not complex instructions,
> make decisions, attend and concentrate for two hours at a time, interact
> adequately with co-workers and supervisors and respond appropriately to changes
> in a work setting.

Tr. 1001.

### B.      The ALJ's Explanations for Discounting Dr. Jenkusky's Opinions Are Insufficient and Not Supported by Substantial Evidence

The ALJ stated she applied the treating source rule to Dr. Jenkusky's opinions, declined

to give them controlling weight, and then accorded them only "some" weight. She explained as

to Dr. Jenkusky's July 6, 2012, listing questionnaires, that

> I primarily note that while Dr. Jenkusky's treatment notes consistently reflect the
> claimant's alcohol use, his opinion does not. Rather, he states somewhat
> ambiguously that the claimant had "persistent bouts [sic] of illness" that prevent
> him from being able to maintain employment. I also note that his opinion is not
> consistent with his later opinion at 36F where he found that the claimant had only
> slight to moderate limitations in social functioning. (Exhibit 36F/2) Accordingly,
> I decline to give his opinion controlling weight.

Tr. 923.

> As to Dr. Jenkusky's May 28, 2015, opinion, she explained that

> I note that the opinion is internally inconsistent. Dr. Jenkusky found only slight to
> moderate limitations in all areas of social functioning but then inexplicably
> opined that the claimant was markedly impaired in this area. This inconsistency
> diminishes the reliability of his opinion. I also note that his opinion is not

supported by treatment notes which reflect that the claimant was doing well on medication, was sober, and that his mood and affect were ok. (Exhibit 37F/3) Notwithstanding the severe limitations he assessed, just one month later Dr. Jenkusky assigned the claimant a GAF rating of 65, indicating his subjective observation that the claimant had only mild symptoms.

Tr. 923.

Finally, as to Dr. Jenkusky's February 18, 2016, opinion, the ALJ explained that

[Dr. Jenkusky] opined that the claimant had marked limitations in sustaining concentration and persistence, social interaction, and adapting to changes in the work place, and met listings 1.04 and 1.06 (34F). I am declining to give this opinion controlling weight for the reasons discussed with respect to Exhibit 34F. I note that this opinion contains the same internal inconsistency regarding the claimant's level of social functioning. I also note that Dr. Jenkusky failed to address the impact of the claimant's substance abuse on his ability to function, even though this opinion appears to have been rendered during a time when the claimant had relapsed. Accordingly, I give this opinion only some weight.

Tr. 924.

Mr. Finley argues that the ALJ violated the treating physician rule by applying an improper legal standard when she evaluated Dr. Jenkusky's opinion. Doc. 18 at 14-19. In support, Mr. Finley asserts that the ALJ's explanation that Dr. Jenkusky's opinions are internally inconsistent is illusory because the ALJ failed to appreciate the distinction between the listings forms and the functional assessment forms Dr. Jenkusky completed. *Id.* at 16. Mr. Finley further asserts that the ALJ ignored the fluctuating nature of Mr. Finley's mental impairments, improperly picked from Dr. Jenkusky's treatment notes and cited to a "good" day, and wrongly conflated signs of improvement with the lack of disabling functional capacity. *Id.* at 16-18. Finally, Mr. Finley asserted that the ALJ failed to consider all of the *Watkins* "deference" factors in weighing Dr. Jenkusky's opinions. *Id.*

The Commissioner contends that the ALJ gave valid reasons for according Dr. Jenkusky's opinions some weight and that substantial evidence supports her decision. Doc.

22 at 17-19. The Commissioner argues that it was reasonable for the ALJ to discount

Dr. Jenkusky's opinions based on his failure to address Mr. Finley's use of alcohol in his

assessments. *Id.* at 17. The Commissioner further argues that the ALJ properly noted the

inconsistencies between Dr. Jenkusky's assessments in the listings forms and functional

assessment forms, as well as the inconsistencies between Dr. Jenkusky's opinions and his

treatment notes. *Id.* at 17-19.

     While the ALJ did not go through each of the regulatory factors in weighing

Dr. Jenkusky's opinions, she did provide some reasons for finding that his opinions were not

supported. First, she explained that Dr. Jenkusky's opinions failed to address the impact of

Mr. Finley's substance abuse. Second, she explained that there was an internal inconsistency

related to Mr. Finley's social functioning between the listings forms and functional assessment

forms Dr. Jenkusky completed. Finally, she explained that Dr. Jenkusky's opinions were

inconsistent with his treatment notes. As set forth below, the ALJ's explanations are insufficient

and not supported by substantial evidence.

     The ALJ discounted Dr. Jenkusky's opinions because they failed to address the impact of

Mr. Finley's substance abuse on his ability to function. The Court finds this explanation

insufficient because it presumes that Dr. Jenkusky could distinguish between the effects of

Mr. Finley's mental disorders and his alcohol abuse and, had he done so, his assessments would

have been less restrictive. This is improper speculation. *McGoffin v. Barnhart*, 288 F.3d 1248,

1252 (10th Cir. 2002) (finding that an ALJ may not make speculative inferences from medical

reports and may reject a treating physician's opinion outright only on the basis of contradictory

medial evidence and not due to his or her own credibility judgments, speculation or lay

opinions). Moreover, Tenth Circuit case law instructs that "where the record is devoid of any

medical or psychological report, opinion, or projection as to the claimant's remaining limitations if [he] stopped using drugs or alcohol, an ALJ should find that DAA is not a contributing factor material to the determination of disability." *Salazar v. Barnhart*, 468 F.3d 615, 624 (10th Cir. 2006). Thus, fairly read, where a medical opinion does not project functional limitations if a claimant stopped using alcohol, the absence of that information goes only to the ALJ's materiality determination and is, therefore, not a proper basis for discounting an opinion.[12] Furthermore, given the nonadversarial nature of these proceedings, the ALJ could have chosen to make inquiry and obtain the information she found lacking before reaching her conclusions. *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (explaining that the standard for developing the record is one of reasonable good judgment limited to fully and fairly developing the record as to material issues).

---

[12] In 1996, Congress enacted the Contract with America Advancement Act ("CAAA"), which amended the Social Security Act. *See* 42 U.S.C. § 423(d)(2)(C) (2000); *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006) (citing Pub. L. No. 104–121, 100 Stat. 848, 852). Pursuant to the reforms of the CAAA, claimants may not be found disabled on account of alcoholism or the use of illegal substances. Accordingly, a claimant will not be found disabled if drug abuse or alcoholism is material to the determination of disability. *See* 42 U.S.C. § 1382c(a)(3)(J) (2012); 20 C.F.R. §§ 416.935-416.941 (2015). This determination of materiality is critical in disability cases involving substance abuse.

In *Salazar*, the Tenth Circuit discussed how to make a materiality determination when mental impairments are involved. The opinion refers to a teletype issued by the Commissioner pertaining to "situations where a claimant has one or more other mental impairments in addition to [drug and alcohol addiction.]" *Id. Salazar*, 468 F.3d at 623. The teletype "stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the [drug and alcohol addiction] is *not* a contributing factor material to the disability determination." *Id.* The teletype also states that "[t]he most useful evidence that might be obtained in such cases is that relating to a period when the individual was not using drugs/alcohol." *Id.* When evaluating this type of evidence, the ALJ must consider "the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence." *Id.*; *see also* SSR 13-2p, 2013 WL 621536, at *9 and *12. Further, the report of a medical or psychological consultant could be the basis for a conclusion that drug and alcohol addiction is material to the determination that a claimant is disabled if two conditions are met. First, the consultant must separate the effects of the mental impairments from those of substance abuse; and second, the consultant must project what limitations would remain if the claimant stopped using drugs or alcohol. *Salazar*, 468 F.3d at 623-24. However, where the record is devoid of any medical or psychological report or opinion as to the claimant's remaining limitations if he stopped using drugs or alcohol, an ALJ should "find that [drug and alcohol addiction] is not a contributing factor material to the determination of disability." *Id.* at 624.

The ALJ also discounted Dr. Jenkusky's opinions because of the "internal inconsistency" between Dr. Jenkusky's *marked limitation* of Mr. Finley's social functioning on the listings forms and *slight and moderate limitations* of social functioning on the functional assessment forms. In doing so, however, the ALJ failed to account for the distinction between the two forms. The listings forms are generally used to assess mental impairment for purposes of steps two (identifying severe impairments) and three (rating severity for the listing), and are structured specifically in terms of the B and C criteria of the listings for mental impairments.[13] *See generally Chrisom v. Colvin*, 531 F. App'x 893, 898 (10th Cir. 2013) (unpublished)[14]; *see also* 20 C.F.R. §§ 404.1502a, 416.920a; POMS DI 34132.009.A *Mental Listing from 12/18/07 to 09/28/2016*.[15] The forms use four broad categories of limitations referenced in the B criteria: restriction of activities of daily living; difficulties in maintain social functioning; difficulties in maintaining concentration, persistence, or pace; and episodes of decompensation. *Chrisom*, 531 F. App'x at 898. In contrast, the MRFCA addresses twenty specific mental functions relevant to the vocational determinations required at steps four and five. *Lull v. Colvin*, 535 F. App'x 683, 685 (10th Cir. 2013) (unpublished). Thus, "inconsistent" assessments between the forms can be explained by their distinct functions. Further, persuasive Tenth Circuit case law holds that in the face of inconsistencies between the two forms, the ALJ should rely on the MRFCA to determine

---

[13] The listing forms are typically part of "[t]he psychiatric review technique described in 20 CFR §§ 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) [which] requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.

[14] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

[15] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999).

a claimant's RFC. *See generally Chrisom*, 531 F. App'x at 898 (finding that claimant's objection to the inconsistency between the MRFCA and PRT was meritless because the MRFCA explained the particularized underpinnings for the PRT's categorical ratings, and the ALJ properly used the MRFCA for the step-five determination); *Lull*, 535 F. App'x at 685 (finding that the ALJ did not err in failing to account for the inconsistencies between the PRT and MRFCA because the ALJ's RFC determination properly included the limitations in the MRFCA assessment). Here, the ALJ did not rely on Dr. Jenkusky's functional assessments, but instead, noting only one area of inconsistency between the two forms; *i.e.,* social functioning, she chose to discount the entirety of Dr. Jenkusky's assessed limitations in *all* areas of functioning without further explanation. This is insufficient.

Finally, the ALJ discounted Dr. Jenkusky's opinions stating they were not supported by his treatment notes. In support of her explanation, the ALJ cited one treatment note, out of twenty-four, to support that Mr. Finley was doing well on medication, was sober, and that his mood and affect were okay.[16] The ALJ's explanation, however, is conclusory and fails to account for all of Dr. Jenkusky's treatment notes, including those that reflected the persistent nature of and ongoing treatment for Mr. Finley's mental impairments. *See generally Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (explaining that a treating physician's references to a claimant being "stable" while also consistently reporting that claimant was unable to work as a result of her mental illness may have simply meant that the claimant was not suicidal). As discussed above, Dr. Jenkusky began treating Mr. Finley on October 5, 2011, at which time he assessed that, in addition to alcohol dependence, Mr. Finley had "rapid mood shifts from

---

[16] Elsewhere in the determination the ALJ relied on many of Dr. Jenkusky's treatment notes in the context of her DAA materiality analysis; *i.e.,* she relied on treatment notes that discussed Mr. Finley's mood swings and periods of relapse to support her RFC including DAA, and relied on treatment notes that indicated sobriety and emotional stability to support her alternative RFC that did not include the effects of DAA.

depression to being 'hyperfunctioning' as well as concurrent anxiety." Tr. 834. Dr. Jenkusky managed Mr. Finley's medications related to his mental impairments for over five years, and consistently indicated that he was treating Mr. Finley for mood disorder in the context of recovery from alcohol dependence. While Dr. Jenkusky's treatment notes during that time often indicated that Mr. Finley was stable and sober and taking his medications as prescribed, they also indicated continued problems with fluctuation in mood, ongoing anxiety and depression, and periods of relapse. Tr. 827-29, 830-31, 832-34, 1388, 1391-92, 1392-93, 1393-94, 1400-01, 1403-04, 1464-65, 1607. Thus, the ALJ relied on one of Dr. Jenkusky's more positive findings to discount his opinions, but failed to discuss significantly probative evidence. This is error. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

For all of the foregoing reasons, the Court finds that the ALJ's explanations for discounting Dr. Jenkusky's opinions are insufficient and not supported by substantial evidence.

### C. The ALJ's Treating Physician Analysis Is Improper

An ALJ should generally give more weight to a treating source opinion because of his "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" *Robinson*, 366 F.3d at 1084; *Watkins*, 350 F.3d at 1300. Thus, all things being equal, the opinion of a treating doctor who has seen a claimant more is placed above the opinion of a physician who has only examined a claimant once, and above a physician who has never seen the claimant at all and only reviewed the medical record. *Robinson*, 377 F.3d at 1084. Here, the ALJ accorded Dr. Jenkusky's opinions "some weight." Tr. 922-23. However, in doing so, the ALJ did not cite to any other medical source opinion evidence related to Mr. Finley's mental impairments that outweighed his opinions. To the contrary, the ALJ accorded all of the other medical opinion evidence "some

weight." This begs the question, "if the ALJ is giving only 'some weight' to all of the opinions, to whose opinion is the ALJ deferring?" An ALJ, who is not a medical provider, must rely on medical providers to determine a claimant's medical condition. Here, it is not clear to the Court what evidence the ALJ relied on to discount Dr. Jenkusky's opinions, particularly since, as discussed below, Dr. Jenkusky's assessments were mostly consistent with the other medical source opinion evidence related to Mr. Finley's ability to do work-related mental activities.

The ALJ failed to demonstrate how Dr. Jenkusky's opinions were inconsistent with the other medical opinion evidence related to Mr. Finley's mental impairments. This is troubling since the Court's review of the evidence demonstrates that they are not inconsistent as follows. (1) Dr. Jenkusky assessed that Mr. Finley had a moderate limitation in his ability to understand and remember detailed instructions. Tr. 1381, 1446. Dr. Simutis assessed the same moderate limitation. Tr. 803. (2) Dr. Jenkusky assessed that Mr. Finley had a moderate limitation in his ability to work in coordination with others. Tr. 1381, 1446. Dr. Smith and Dr. Walker assessed the same moderate limitation, Tr. 806, 1000, and Dr. Simutis assessed that Mr. Finley had a marked limitation in this area. Tr. 803. (3) Dr. Jenkusky assessed that, when in a period of lethargy and depression, Mr. Jenkusky had a marked limitation in his ability to maintain attention and concentration for extended periods of time. Tr. 1381, 1446. Dr. Simutis assessed the same marked limitation, Tr. 803, and both Dr. Smith and Dr. Walker assessed that Mr. Finley had a moderate limitation in this area. Tr. 806, 1000. (4) Dr. Jenkusky assessed that Mr. Finley had a marked limitation in his ability to perform activities within a schedule and maintain regular attendance. Tr. 1381, 1446. Dr. Walker assessed Mr. Finley had a moderate limitation in this area. Tr. 1000. (5) Dr. Jenkusky assessed that Mr. Finley had a marked limitation in his ability to complete a normal work week or work day without interruptions. Tr. 1381, 1446. Dr. Walker

assessed that Mr. Finley had a moderate limitation in this area.  Tr. 1000.  (6) Finally,

Dr. Jenkusky assessed that Mr. Finley had a marked limitation in his ability to adapt to change.

Tr. 1382, 1447.  Dr. Simutis assessed that Mr. Finley had a mild limitation in this area, Tr. 803,

and Dr. Walker assessed that he had a moderate limitation in this area.  Tr. 1001.  In sum, all of

Dr. Jenkusky's assessed limitations were either supported in full or in part by the other medical

source opinion evidence related to Mr. Finley's ability to do work-related mental activities.[17]

And the ALJ failed to explain why she accepted some of his limitations but rejected others.  This

is error.  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (an ALJ is not entitled to pick

and choose through an uncontradicted medical opinion, taking only the parts that are favorable to

a finding of nondisability).

   For all of the foregoing reasons, the Court finds that the ALJ failed to apply the correct

legal standard in weighing Dr. Jenkusky's opinions.  This is error.

---

[17] As previously discussed, Dr. Jenkusky's assessments of Mr. Finley's ability to do work-related mental activities did not project functional limitations in the absence of alcohol.  *See* Section III.B, *supra.*  Similarly, neither Dr. Simutis's nor Dr. Smith's assessments projected functional limitations in the absence of alcohol.  Lastly, Dr. Walker indicated that he considered DAA in his evaluation, but concluded "[c]laimant reports maintained sobriety – DAA is not an issue."  Tr. 998.

   As to certain of the moderate limitations Dr. Smith and Dr. Walker assessed, the Commissioner argues that the ALJ properly relied on Dr. Smith's and Dr. Walker's Section III narratives in determining the RFC and needed only to address Section I limitations if there were no commensurate Section III findings that might account for them. Doc. 22 at 22-23.  The Court, however, is not persuaded that the Section III narratives properly accounted for certain of the Section I limitations.  For example, Dr. Smith concluded that Mr. Finley had a moderate limitation in his ability to maintain attention and concentration for extended periods, yet in his narrative assessed that Mr. Finley could "attend/concentrate for extended periods without a need for unscheduled breaks."  Tr. 806-808.  This is a clear contradiction.  *See Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC findings.)  Additionally, Dr  Walker s Section III narrative failed to describe the effects of his Section I assessed moderate limitations regarding Mr. Finley's ability to perform activities within a schedule and maintain regular attendance and to complete a normal work week or work day without interruptions. Tr. 1000-001.  The ALJ similarly failed to account for these limitations in the RFC or explain why she rejected them.  *See* POMS § DI25020.010 (explaining that the mental abilities needed to understand, carry out and remember simple instructions and to perform unskilled work include the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods").

**D.** **Remaining Issues**

The Court will not address Mr. Finley's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV. Conclusion

For the reasons stated above, Mr. Finley's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 18) is **GRANTED.**

**STEVEN C. YARBROUGH**
**United States Magistrate Judge,**
**Presiding by Consent**